## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| THE NOCO COMPANY, an Ohio Corporation, | |
| *Plaintiff, Counterclaim Defendant,* | Case No.  23-CV-2194-ACC-LHP |
| v. | |
| DELTONA TRANSFORMER CORPORATION, a Florida Corporation, | |
| *Defendant,* | |
| DELTRAN USA, LLC, a Florida Limited Liability Company, and DELTRAN OPERATIONS USA, INC., a Florida Corporation. | |
| *Defendants, Counter Claimants.* | |

## PLAINTIFF AND COUNTERCLAIM DEFENDANT THE NOCO COMPANY'S MOTION TO DISMISS DEFENDANTS AND COUNTER CLAIMANTS DELTRAN USA, LLC AND DELTRAN OPERATIONS USA, INC.'S AMENDED COUNTERCLAIMS OF INEQUITABLE CONDUCT

Pursuant to F.R.C.P. 12(b)(6), Plaintiff and Counterclaim Defendant The

NOCO Company ("NOCO") moves to dismiss Defendants and Counter

Claimants Deltran USA, LLC ("Deltran") and Deltran Operations USA, Inc.'s

("Deltran Operations") (together, "the Deltran Defendants") amended

counterclaims of inequitable conduct (Counts III, VI, and IX) filed on

February 23, 2024.  (Dkt. No. 39).[1]

## <u>INTRODUCTION</u>

The Federal Circuit warns that "charging inequitable conduct has become

[an all too] common litigation tactic."  *Therasense, Inc. v. Becton, Dickinson & Co.*,

649 F.3d 1276, 1289 (Fed. Cir. 2011).  It condemns as "an absolute plague"

speculative inequitable conduct allegations—like the Deltran Defendants raise in

this case—"on the slenderest grounds."  *Id.* (quoting *Burlington Indus., Inc. v.*

*Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988)).  Such claims "plague[] not only

the courts but also the entire patent system."  *Id.*  And to combat this "doctrine

that has been overused to the detriment of the public," the Federal Circuit

imposes the strict particularized-pleading standards of F.R.C.P. 9(b).  *Id.* at 1290.

The Deltran Defendants' bare allegations against NOCO demonstrate why

the Federal Circuit is rightly concerned about spurious claims of inequitable

conduct.  The Deltran Defendants have tried numerous times to attack NOCO's

patents as unenforceable, all without success.  First, they alleged inequitable

---

[1] NOCO's Motion to Dismiss "automatically extends the time to answer until after the court has ruled on the motion."  *Altor Locks, LLC v. Proven Indus., Inc.*, No. 8:22-cv-597-MSS-TGW, 2022 WL 17987073, at *6 (M.D. Fla. Oct. 18, 2022); *see also Beaulieu v. Bd. of Trustees of Univ. of W. Fla.*, Case No. 3:07-cv-30, 2007 WL 2020161, *2 (N.D. Fla. July 9, 2007) ("[A] party need not file an answer while a partial motion to dismiss is pending.").

conduct without alleging that even a single material, non-cumulative reference was withheld from the PTO, nor did they plead any facts that would permit a reasonable inference of materiality or intent to deceive.  NOCO moved to dismiss their inequitable conduct counterclaims, showing that, *inter alia*, publicly-available patent prosecution records prove that the allegedly-withheld prior art was, in fact, disclosed.

The Deltran Defendants concede they were wrong, and now accuse NOCO of disclosing ***too much*** prior art, despite originally accusing NOCO of disclosing too little.  Again, Defendants demonstrate why the Federal Circuit bemoans the "absolute plague" of speculative inequitable conduct allegations.  As set forth herein, the Deltran Defendants' latest attempt to allege inequitable conduct still fall well short of the Rule 9(b) particularity standards and, therefore, their counterclaims should be dismissed.

## BACKGROUND

On November 13, 2023, NOCO filed its Complaint against Deltran, Deltran Operations, and Deltona Transformer Corporation ("DTC"), for infringement of NOCO's U.S. Patent Nos. 11,447,023 (Ex. A), 11,584,243 (Ex. B), and 11,667,203 (Ex. C) (collectively, "the Asserted Patents").  Dkt. No. 1 at ¶¶ 63-80.

***Prosecution of the Asserted Patents.***  As the Deltran Defendants now admit, NOCO disclosed *hundreds* of references to the PTO during prosecution of

the Asserted Patents—including a trove of information about the same Shenzhen Carku Technology Co., Ltd. ("Carku") products that the Deltran Defendants originally alleged were withheld.  In fact, NOCO even provided the PTO with the same inequitable conduct allegations by the same counsel that are alleged in this case.  Against this backdrop, the Deltran Defendants *still* fail to identify *any* material information about alleged Carku prior-art products that was not disclosed to, and duly considered by, the PTO.

For example, NOCO disclosed a December 2013 email chain between a Carku employee named Wanny and Jonathan Nook, NOCO's President and Chief Visionary Officer, including an attachment ("the D21 brochure") detailing Carku's "E-Power" products.  Ex. D at 004-016.  The D21 brochure is listed on the face of each of the Asserted Patents.  Exs. A at 5 (listing the "D21 advertisement brochure" as a cited reference), B at 6 (same), C at 6 (same); *see also Shire LLC v. Amneal Pharms., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015) (holding that references "listed on the face of the patents-in-suit" are "presumed to have [been] considered" by the examiner).

NOCO also disclosed an April 2014 email chain between Carku and Giuseppe Orfano (Kraugtli (Schweiz) AG), including an attachment ("the D22 brochure") for Carku's E-Power products, including a so-called "Intelligent Jumper Cable."  Ex. E. at 003-013.  The D22 brochure is also listed on the face of

each of the Asserted Patents.  Exs. A at 5 (listing the "D22 advertisement brochure" as a cited reference), B at 6 (same), C at 6 (same).

NOCO disclosed other Carku documents to the PTO, *see, e.g.*, Exs. F-H, all of which are listed on the face of each of the Asserted Patents.  *See, e.g.*, Exs. A at 6 (listing the "Carku Product Brochure for Epower-20 jump starter," "Carku Epower-20B catalog information," "User manual for Carku E-Power 21," and "Specification sheet for Carku E-Power 21," among other cited references), B at 5-6 (same), C at 5-6 (same).

NOCO also disclosed filings from related proceedings about Carku jump starters, including the very same inequitable conduct accusations the Deltran Defendants make in this case.  Ex. I at 212-20; *see also* Exs. A at 6 (listing Deltran's "Response to the Amended Complaint and Notice of Investigation" as a cited reference), B at 7 (same), C at 6 (same).  NOCO disclosed numerous invalidity contentions to the PTO as well.  For example, NOCO disclosed Carku's "Grounds of Invalidity" filed in the High Court of Justice of England and Wales, which included: (1) a Carku E-Power User Manual; (2) a Carku E-power-21 User Manual; (3) datasheets for Carku jump starters and jumper cables; (4) pictures of Carku's booth at the 115th China Import and Export Fair 2014 ("the 2014 Canton Fair"); (5) a March 2014 email chain between Wanny and Thomas Lenz (Edelbert Lenz GmbH & Co. KG) that included a "Quotation" for the E-Power-21 jump

starter with pictures; (6) an April 2014 email chain between Wanny and "Sofia" (KAZ CO., LTD.) that included user manuals and a table about the E-Power-21; and (7) the April 2014 Wanny-Orfano email chain and attachment. Ex. J. And Carku's "Grounds of Invalidity" appears on the face of each Asserted Patent. Exs. A at 6 (listing the "Grounds of Invalidity: Prior use of the Carku E-Power 21 device …" as a cited reference), B at 5 (same), C at 5 (same).

NOCO even disclosed publicly-available portions of Deltran's invalidity contentions from ITC Investigation No. 337-TA-1256 ("the 1256 Investigation") that listed the "Carku Product Brochure for the EPower-20 jump starter product," the "Carku Product Brochure for the Epower-21 jump starter product," and the "2014 Canton Fair Brochure," as prior-art references. Ex. K; *see also id.* at 014. These invalidity contentions are also listed on the face of the Asserted Patents. Ex. A at 6 (listing "In re Certain Portable Battery Jumpstarters and Components Thereof, 3370TA0 1256, United States International Trade Commission (Mar. 17, 2021); Respondents Initial Invalidity Contentions" as a cited reference), B at 7 (same), C at 6 (same). Notably, the E-Power-10 and E-Power-21 jump starters were found not to qualify as prior art in the 1256 Investigation. Ex. L at 271, 285-87.

NOCO further disclosed DTC's invalidity contentions for claims of NOCO's U.S. Patent No. 9,007,015 ("the '015 Patent"), filed in *The NOCO*

-6-

*Company v. Deltona Transformer Corp.*, Case No. 6:20-cv-00050-PGB-GJK (M.D. Fla.), which listed Carku's "E-Power" and the "Carku/Deltran USA LLC" "Battery Tender Power Pack" as a prior art, with detailed, limitation-by-limitation analyses for the latter.  Ex. M; *see also id.* at 010, 107-41.  These invalidity contentions were also listed on the face of the Asserted Patents.  Ex. A at 5 (listing "*The Noco Company v. Deltona Transformer Corporation and Deltran USA, LLC*, Defendant Deltran USA, LLC's Invalidity Contentions, In the United States District Court for the Middle District of Florida, Orlando Division" as a cited reference), B at 5 (same), C at 5 (same).

> ***The Deltran Defendants allege inequitable conduct.***  On January 12, 2024, the Deltran Defendants answered NOCO's Complaint and alleged several counterclaims, among them, unenforceability of the Asserted Patents for inequitable conduct.  Dkt. No. 34 at ¶¶ 76-82.

> On February 2, 2024, NOCO moved to dismiss the inequitable conduct counterclaims because the Deltran Defendants failed to plead any allegation of materiality, facts from which knowledge of materiality could be reasonably inferred, or facts from which specific intent to deceive could be inferred.  Dkt. No. 36 at 13-17.

> On February 23, 2024, the Deltran Defendants amended their Answer, including their inequitable conduct claims, in a most cursory fashion.  Dkt.

No. 39 (hereinafter, "Counterclaims") at ¶¶ 76-91 (Count III), ¶¶ 100-115 (Count VI), ¶¶ 124-139 (Count IX).  They largely repeated the same accusations, but this time they admitted that NOCO disclosed "some" information about the alleged Carku prior-art products to the PTO they had previously alleged NOCO had not disclosed.  *Id.* at 40; *see also id.* at 41-42, 45, 47, 51-53.   In view of this admission, they pivoted and now accuse NOCO of "intentionally bur[ying]" those same references.  *Id.* at 42, 47, 53; *see also id.* at 16, 40, 41, 45, 46, 51.  But critically, they allege no facts supporting an inference of materiality, and they allege no facts to support any inference of intent.

Moreover, the Deltran Defendants fail to articulate exactly what references (or parts of references) NOCO allegedly withheld or buried.  They still accuse NOCO of withholding unspecified information about the alleged Carku prior-art products—even though those products were admittedly disclosed.  *Id.* at 42, 47, 52.  But they never identify exactly what was supposedly withheld or buried, why that subject matter would have made any difference to the prosecution of the patents, and why any inference of intent could conceivably follow from the fact that NOCO did disclose significant information about the alleged Carku prior-art products.  And while they allege that NOCO was provided with information about certain Carku jump starters, *id.*, and that NOCO received a sample of Carku's E-Power-01 Elite jump starter, *id.* at ¶ 18, they present no

allegations to counter the fact that the alleged Carku prior-art products *were*

disclosed to the PTO:

| Disclosed Reference | Allegedly Withheld Reference |
|---|---|
| Ex. F | Dkt. No. 39-1 at 27-28 |
| Ex. H | Dkt. No. 39-1 at 28 |
| Ex. J at 030-036, 038-049, 051-063 | Dkt. No. 39-1 at 36-42, 44-55, 57-69 |
| Ex. E at 001-013 | Dkt. No. 39-1 at 57-69 |
| Ex. G | Dkt. No. 39-1 at 73 |
| Ex. D at 001-016 | Dkt. No. 39-1 at 76-91 |

The Deltran Defendants also allege that NOCO withheld documents filed

in the 1256 Investigation that mention Carku's jump starters. Counterclaims at

¶¶ 26, 55. For example, Michael Prelec, Jr., CEO of Deltran, claims he "attended

the 2014 Canton Fair" where Carku "demonstrated its Epower-20 and Epower-21

jump starter[s]." *Id.* at ¶¶ 31-32. The Deltran Defendants offer two pictures of

Carku's booth at the 2014 Canton Fair to support their allegation. Dkt. No. 39-1

at 12-13. But again, NOCO gave the PTO these *very same* pictures. *Compare* Ex. J

at 27-28, *with* Dkt. No. 39-1 at 12-13.

In an attempt to plead their case, the Deltran Defendants point to two

invalidity contentions that compare the Carku E-Power-10 against the claims of

the '015 Patent and NOCO's U.S. Patent No. 10,604,024, neither of which are

asserted in this case. Counterclaims at ¶ 55; *see also* Dkt. Nos. 39-10, 39-11. But,

NOCO disclosed invalidity contentions to the PTO. In fact, NOCO disclosed

contentions about the same products NOCO is now accused of withholding, *i.e.*,

Carku's E-Power jump starters.  *Compare* Ex. M at 010, *with* Dkt. Nos. 39-10, 39-11.  Again, the Deltran Defendants never allege any basis to infer that the allegedly withheld invalidity contentions are material and not cumulative of what was disclosed to the PTO by NOCO.  Nor do they address the fact that the Administrative Law Judge in the 1256 Investigation found that the E-Power-10 — the primary reference in both allegedly withheld contentions, Dkt. Nos. 39-10, 39-11 — does not even qualify as prior art in the first place.  Ex. L at 271, 285-87.

In the end, the Deltran Defendants offer no allegations or analysis concerning the material, non-cumulative nature of any specific undisclosed reference.  They instead offer the same conclusory refrain throughout their Counterclaims: "The E-Power-10 includes each and every limitations present in the independent claims of the patents-in-suit."  Counterclaims at ¶ 14; *see also id.* at ¶¶ 17, 30.  Worse, they resort to "information and belief" to take pot-shots at the reputations of NOCO's counsel and its executives.  *Id.* at ¶ 21.

Finally, although the Deltran Defendants acknowledge that NOCO, in fact, disclosed the alleged Carku prior-art products it is accused of withholding, they allege that NOCO "effectively" and "intentionally" buried them in "voluminous information disclose statements."  *Id.* at ¶¶ 14, 40, 87, 90, 107, 111, 114, 131, 135, 138.  But once again, the Deltran Defendants offer no materiality analysis or allegations from which knowledge or intent can be inferred.  Rather, this

allegation is a baseless afterthought the Deltran Defendants added after their allegations of withholding references were shown to contradict publicly-available PTO records.

## ARGUMENT

## I.  STANDARD FOR DISMISSAL

Inequitable conduct "must be pled with particularity" under Rule 9(b). *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). "Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327. "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the *particularized* factual bases for the allegation, does not satisfy Rule 9(b)." *Id.* at 1326-27 (emphasis added). Federal Circuit law governs whether an inequitable conduct pleading satisfies Rule 9(b). *Id.* at 1318.

Moreover, "a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328–29. Defendants do not, and cannot, meet the rigors of Rule 9(b). Counterclaims III, VI, and IX should be dismissed with prejudice.

## II.    ARGUMENT

This case exemplifies why the Federal Circuit takes a dim view of hand-waving claims of inequitable conduct and, therefore, requires particularized pleadings under Rule 9(b).  As set forth below, the Deltran Defendants have not pled with the requisite specificity: (1) any allegation of materiality with respect to allegedly withheld or buried references; (2) any facts from which knowledge of materiality can be reasonably inferred; or (3) any facts from which "specific intent" to deceive or bury references can be reasonably inferred.  Each failure, alone, is sufficient grounds to dismiss the inequitable conduct counterclaims.

### A.    The Deltran Defendants Have Not Pled Any Allegation Of Materiality With The Requisite Level Of Specificity

Perhaps the most glaring flaw is the Deltran Defendants' failure to identify a single undisclosed or buried reference that is material.  *See Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 991 (Fed. Cir. 2022) ("[I]nequitable conduct requires a showing that undisclosed prior art was but-for material to the PTO's decision of patentability.  Prior art is but-for material if the PTO would have denied a claim had it known of the undisclosed prior art." (citing *Therasense*, 649 F.3d at 1291)); *Aevoe Corp. v. AE Tech. Co., LTD.*, No. 2:12-cv-00053-GMN, 2013 WL 876036, at *8 (D. Nev. Mar. 7, 2013) (Defendants' counterclaim … fails to plead 'how' the examiner would have used this information in examining the patentability of the claims with the particularity required by Rule 9(b).").  The Deltran Defendants

did not analyze the allegedly withheld references against any of the claims of the

Asserted Patents, or make any specific allegation that the examiner would have

denied any claim had they known of any particular reference.  Instead of

particularized facts, they simply offer the following boilerplate, repeated over-

and-over:

> 82.   These documents are material because they individually and
> collectively demonstrate that devices were on sale prior to the effective filing date
> of the '023 Patent and, but for not receiving the information present in the
> documents, the Examiner would not have allowed the claims of the '023 Patent.

Counterclaims at ¶ 82; *see also id.* at ¶¶ 14, 106, 130. "Such conclusory allegations

are insufficient to plead an inequitable conduct defense."  *Ocado Innovation Ltd. v.*

*AutoStore AS*, No. 1:21-cv-00041-JL, 2021 WL 6197076, at *4 (D.N.H. Dec. 30,

2021); *see also, e.g., Analog Devices, Inc. v. Xilinx, Inc.*, No. 19-cv-2225-RGA, 2021

WL 466859, at *3 (D. Del. Feb. 9, 2021) ("ADI's conclusory assertion that '[b]ut for

Mr. Levi's material omission, the USPTO would not have granted one or more

claims of the '184 patent' is insufficient to satisfy this pleading standard.").

The need for the Deltran Defendants to allege materiality with

particularity is especially acute in this case, because, as shown above, NOCO

disclosed the alleged Carku prior-art products to the PTO.  Yet the Deltran

Defendants did not address materiality or whether any supposedly withheld

reference is *not cumulative* of other disclosed references.  *See Cal. Inst. of Tech.*, 25 F.4th at 991 ("Prior art is not but-for material if it is merely cumulative." (citing *Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343, 1350 (Fed. Cir. 2017))); *Taltech Ltd. v. Esquel Enterprises Ltd.*, 604 F.3d 1324, 1329 (Fed. Cir. 2010) ("A cumulative reference … is not material."); *Aevoe Corp.*, 2013 WL 876036, at *8 ("[T]o satisfy the 'why' component, Defendants' counterclaim must also plead with particularity that the withheld information is not cumulative of the information actually disclosed during prosecution.").

This failure is fatal to their counterclaims.  Many of NOCO's disclosed references are identical to those the Deltran Defendants incorrectly allege were withheld.  *See Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000) ("An applicant can not be guilty of inequitable conduct if the reference was cited to the examiner.").  And even if a disclosed reference is not identical to a specific allegedly undisclosed reference, they would still need to say why any allegedly undisclosed information meets the strict "but-for" materiality standard.  *See Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 1000 (Fed. Cir. 2007) ("Information cumulative of other information already before the Patent Office is not material.").

The Deltran Defendants did not make any particularized allegations of materiality.  Their counterclaims should be dismissed for this reason alone.

**B.      The Deltran Defendants Have Not Pled Any Facts From Which Knowledge Of Materiality Can Be Reasonably Inferred**

The Deltran Defendants have not pled any facts from which it can be "reasonably infer[red]" that anyone involved in the filing or prosecution of the Asserted Patents knew of the alleged materiality, nor can they.  *Exergen*, 575 F.3d at 1328-29; *see id.* at 1330 ("[O]ne cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material information contained in that reference."); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995) ("In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference.").

So weak is this assertion that the Deltran Defendants allege only that someone involved in the filing or prosecution of the Asserted Patents "knew *this* was material to claims because the only claim that survived Carku's IPR challenge recited USB input functionality."  Dkt. No. 39 at 41, 47, 52 (emphasis added).  But they never say what "this" refers to.  Absent particularized allegations, their pleadings are insufficient as a matter of law.  *See Exergen*, 575 F.3d at 1328-29; *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) (holding that the district court "properly dismissed" allegations that "the patentee failed to disclose all of the relevant prior art known to it" because the "pleading lack[ed] the requisite particularity");

-15-

*Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09-01531 RS, 2010 WL 3069322, at
*2 (N.D. Cal. Aug. 4, 2010) ("It is incumbent on Elan to plead sufficient facts to
support an inference that Della Bonna not only knew of the product's existence
generally, but that he knew enough about it such that he did or should have
recognized it to be material.").

The Deltran Defendants have not pled any particularized facts from which
knowledge of materiality can be reasonably inferred.  The inequitable conduct
counterclaims should be dismissed for this additional reason.

### C.    The Deltran Defendants Have Not Pled Any Facts From Which "Specific Intent" Can Be Reasonably Inferred

Finally, the Deltran Defendants have not pled any facts from which it can
be "reasonably infer[red]" that anyone involved in the filing or prosecution of
the Asserted Patents acted with "specific intent to deceive the PTO."  *Exergen*,
575 F.3d at 1328-29; *see also Therasense, Inc.*, 649 F.3d at 1290 ("[S]pecific intent to
deceive must be 'the single most reasonable inference able to be drawn from the
evidence.'" (quoting *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366
(Fed. Cir. 2008))).  Such an omission spells doom for the counterclaims.

Again, the Deltran Defendants allege only that some named inventors
were generally aware of certain references.  But Federal Circuit precedent
demands greater particularity.  *See Exergen*, 575 F.3d at 1328-29; *Hebert v. Lisle
Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996) ("Intent to deceive can not be inferred

-16-

solely from the fact that information was not disclosed; there must be a factual

basis for a finding of deceptive intent."); *BlackBerry Ltd. v. Typo Prod. LLC*, No. 14-

cv-00023-WHO, 2014 WL 1867009, at *3 (N.D. Cal. May 8, 2014) (holding that "[a]

conclusory allegation of specific intent is insufficient," and finding that

allegations that a prior-art reference was not disclosed "with the specific intent to

deceive the PTO" as "not sufficient to plead inequitable conduct" where no facts

were pled "from which [the court] can reasonably make this inference").  The

Deltran Defendants do not allege any specific facts from which deceptive intent

could follow—especially because NOCO disclosed the alleged Carku prior-art

products that the Deltran Defendants falsely say were withheld.

The Deltran Defendants' new "burying" allegations fare no better.  A court

in this District dismissed with prejudice, an identical allegation, holding that

> Qualcomm's assertions that ParkerVision provided voluminous
> references in order to 'distract' the PTO examiner cannot meet
> [Rule 9(b)'s] standard.  Taking into account the practice of bringing
> inequitable conduct claims against a patentee for under-disclosing
> references, an equally if not more reasonable inference is that
> ParkerVision aimed to insulate itself from such claims by over-
> disclosing references.

*ParkerVision, Inc. v. Qualcomm Inc.*, 924 F. Supp. 2d 1314, 1318 (M.D. Fla. 2013); *see*

*also ESCO Corp. v. Cashman Equip. Co.*, 158 F. Supp. 3d 1051, 1062–63 (D. Nev.

2016) (similarly holding "an equally reasonable inference[,] that [patentee] was

attempting to avoid being accused of inequitable conduct for failing to disclose enough references."). *ParkerVision* and *ESCO* are on all fours with this case.

The Deltran Defendants have not pled any particularized facts from which intent to deceive can be reasonably inferred. The inequitable conduct counterclaims should be dismissed for this additional reason.

### D.    Amending The Deltran Defendants' Inequitable Conduct Counterclaims Would Be Futile

The inequitable conduct counterclaims should be dismissed with prejudice because the Deltran Defendants have made clear that they have no particularized facts to plead. "[A] court may properly deny leave to amend [counterclaims] under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004). As the Deltran Defendants' amended allegations demonstrate, amendment is futile in this case. They do not and cannot show that any allegedly withheld information is material and not cumulative of the other information NOCO disclosed to the PTO, including the alleged Carku prior-art products. Nor can they allege facts from which specific intent to deceive the PTO could reasonably be inferred. The Deltran Defendants have already had at least two bites at the apple. They should not be given a third.

## <u>CONCLUSION</u>

For the foregoing reasons, NOCO respectfully requests that the Deltran Defendants' counterclaims of inequitable conduct be dismissed with prejudice.

### <u>Local Rule 3.01(g) Certification</u>

I hereby certify that, prior to filing this Motion, counsel for NOCO conferred with the Deltran Defendants' counsel in accordance with Local Rule 3.01(g) by video conference on March 7, 2024, and the parties were not able to resolve this Motion.

Dated: March 15, 2024

Respectfully submitted,

By: */s/ Meredith Wilkes*

Meredith M. Wilkes (*Pro Hac Vice*)
Email: mwilkes@jonesday.com
David B. Cochran (*Pro Hac Vice*)
Email: dcochran@JonesDay.com
John C. Evans (*Pro Hac Vice*)
Email: jcevans@jonesday.com
JONES DAY
901 Lakeside Ave. E
Cleveland, OH 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212

Joseph D. Farley (*Pro Hac Vice*)
JONES DAY
325 John H. McConnell Blvd.
Suite 600
Columbus, OH 43215
jfarley@jonesday.com
Telephone: (614) 469-3939
Facsimile: (614) 461-4198

Michelle Hogan
Florida Bar No. 1010992
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, FL 33131
mhogan@jonesday.com
Telephone: (305) 714-9700
Facsimile: (305) 714-9799

*Attorneys for Plaintiff*
*The NOCO Company*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on March 15, 2024, I have caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system.  I also certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Meredith M. Wilkes*
Meredith M. Wilkes


*Counsel for Plaintiff*
*The NOCO Company*
