UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**THE NOCO COMPANY,**

        **Plaintiff,**

v.                                                  Case No: 6:23-cv-2194-PGB-LHP

**DELTONA TRANSFORMER CORPORATION, DELTRAN USA, LLC and DELTRAN OPERATIONS USA, INC.,**

        **Defendants.**
_____/

## ORDER

This cause is before the Court on Defendant Deltona Transformer Corporation's ("**DTC**") Motion to Dismiss With Prejudice. (Doc. 33 (the "**Motion to Dismiss**")). Plaintiff The NOCO Company ("**NOCO**") filed a response in opposition. (Doc. 37). Upon due consideration, DTC's Motion to Dismiss is granted in part and denied in part, as NOCO is granted leave to replead.

**I.     BACKGROUND**

On November 13, 2023, NOCO sued DTC, Deltran USA, LLC ("**Deltran**"), and Deltran Operations USA, Inc. ("**Deltran Operations**") (collectively the "**Defendants**") for allegedly violating three patents that NOCO owns. (Doc. 1 (the "**Complaint**")). The patents at issue are U.S. Patent Nos. 11,447,023 ("**'023 Patent**"), 11,584,243 ("**'243 Patent**"), and 11,667,203 ("**'203 Patent**")

(collectively the "**patents**"). (*Id*. ¶ 17). All three patents pertain to portable devices capable of jump-starting an automobile. (*Id*. ¶¶ 18–20).

NOCO alleges that "upon information and belief, Defendants are operating in concert to offer to sell, sell, [sic] and/or use jump starters within the United States . . . that infringe the '023 Patent, the '203 Patent, and the '243 Patent." (*Id*. ¶ 22). DTC owns the "Battery Tender" trademark used in connection with the sale of allegedly infringing products. (*Id*. ¶ 25). NOCO avers the "Defendants have directly infringed the '023 Patent" without specifying DTC's involvement in the alleged infringing activity. (*Id*. ¶ 64). NOCO repeats this allegation as it relates to the two other patents. (*Id*. ¶¶ 69, 76). Each count of the Complaint is based on NOCO's information and belief. (*Id*. ¶¶ 66, 72, 78).

DTC moves to dismiss the Complaint because NOCO: (1) improperly lumps all three Defendants together and thus, violates the prohibition against shotgun pleadings, and (2) fails to allege specific involvement by DTC in the making, using, offering for sale, selling, or importing the patented invention. (Doc. 33, pp. 2–3).

## II.   LEGAL STANDARDS

### A.   Shotgun Pleading

There are four general categories of shotgun pleadings: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts"; (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint "that commits the sin of not separating into a different count each cause

2

of action or claim for relief"; and (4) a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

### B. Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Thus, to survive a motion to dismiss made pursuant to Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Moreover, the court is "not bound to accept as true a legal conclusion couched as a factual allegation," and the court must view the complaint in the light most favorable to the plaintiff and resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

In sum, the court must (1) ignore conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; (2) accept well-pled factual allegations as true; and (3) view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## III.  DISCUSSION

### A.  The Complaint Is a Shotgun Pleading

The Complaint prepared by NOCO asserts "multiple claims against multiple defendants without specifying which of the [D]efendants are responsible for which acts or omissions" by lumping all three Defendants together in each of the three counts. (Doc. 33, pp. 9–10). Each Defendant is a separate legal entity, and the conduct supporting the alleged infringing activity should be pled separately as to each Defendant. Rather than parsing the evidence, NOCO alleges that "upon information and belief, Defendants are operating in concert." (Doc. 1, ¶ 22). This, by itself, cannot put each Defendant on notice as to how their individual conduct gives rise to a claim of direct patent infringement.[1] As a result, the Complaint

---

[1]  The "Background" section of the Complaint fails to clarify the roles and offending conduct allegedly perpetrated by each Defendant. (*See* Doc. 1). For example, NOCO alleges that the Defendants offer to sell or are selling the Accused Battery Tender® jump starters on www.batterytender.com, while clarifying that the website is operated by Deltran, and the copyright notice for the site identifies Battery Tender® as a Deltran Operations Brand. (Doc. 1, ¶¶ 26–27). DTC is not mentioned as having any ownership or control over the website and is still lumped with Deltran and Deltran Operations as one of the Defendants offering to sell or selling the accused products. (*Id.*). Similarly, NOCO asserts that the Defendants offer to sell or sell the accused products on the Amazon marketplace without identifying DTC's role in that endeavor. (*Id.* ¶ 28); *see Pegasus Imaging Corp. v. Northrop Grumman Corp.*, No. 8:07-CV-1937-T-27EAJ, 2008 WL 2268323, at *1–3 (M.D. Fla. June 2, 2008) (dismissing claims against co-defendant parent company where complaint failed to distinguish between conduct of parent and subsidiary co-defendants and contained only conclusory allegations that the defendants "acted in concert" because such unsupported claims were "inconsistent with the separate identities of corporate entities").

violates the fourth category of shotgun pleadings. *See Weiland*, 792 F.3d at 1321–23. Consequently, DTC's Motion to Dismiss the Complaint as a shotgun pleading is granted, and in repleading, NOCO must name each Defendant separately and specify how that Defendant infringes the relevant patent(s).

### B. The Complaint Fails to Plea Sufficient Facts About DTC

NOCO relies on conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim in bringing its patent infringement claims against DTC. While NOCO alleges that the "Battery Tender" trademark is owned by DTC and is used by its licensee in connection with the sale of the accused products, this is not enough to assert a patent infringement claim. DTC is correct that the Complaint lacks factual allegations showing that "DTC itself makes, uses, offers to sell, sells, or imports into the United States any of the accused BATTERY TENDER branded products." (Doc. 33, p. 4). DTC argues that the Federal Circuit's holding in *Hockerson-Halberstadt, Inc. v. JSP Footwear, Inc.*, 104 F. App'x. 721, 723–24 (Fed. Cir. 2004), finding trademark licensor's ability to control the licensee and veto shoe designs based on style or quality is insufficient to support a claim for direct patent infringement, is dispositive. (*Id.* at p. 5). The trademark licensor in *JSP Footwear* had the right to approve designs for quality and style but had no involvement in the manufacture or design of the accused shoes. *JSP Footwear, Inc.*, 104 F. App'x. at 723–24. The Court held that "[d]irect infringement . . . requires more than mere control; direct infringement requires making, using, offering to sell, or selling a patented invention." *Id.* at 724.

NOCO tries to distinguish *JSP Footwear* by arguing that "NOCO's infringement allegations are not limited to mere control. NOCO alleges that DTC also 'use[s]' the infringing jump starters by virtue of its status as a trademark licensor, and is working with the other Defendants to offer to sell and/or sell the Accused Battery Tender® jump starters." (Doc. 37, p. 8 (citing Doc. 1, ¶ 22). The Complaint, however, does not read as NOCO suggests:

> As set forth more fully below, upon information and belief, Defendants are operating in concert to offer to sell, sell, and/or use jump starters within the United States, including in the State of Florida, and in this District, over at least Defendants' website (www.batterytender.com) and the Amazon marketplace (www.amazon.com) that infringe the '023 Patent, the '203 Patent, and the '243 Patent.

(Doc. 1, ¶ 22).

The allegation relied on by NOCO does not attribute any specific conduct to DTC and thus, does not support the contention that DTC somehow "uses" the accused products through its status as a licensor.[2]

Finally, NOCO's reliance on *Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1519 (11th Cir. 1992) for the premise that trademark law "imposes a duty upon a licensor to supervise a licensee's use of the licensor's own trademark" does not save the Complaint. (Doc. 37, p. 7). While the duty to supervise a trademark license protects the public from being misled about the quality or consistency of the product offered under the licensor's mark, "[t]he duty does not

---

[2] NOCO also fails to cite precedent which holds that a trademark licensor "uses" an infringing product because of its status as a licensor.

6

give a licensor control over the day-to-day operations of a licensee beyond that necessary to ensure uniform quality of the product or service in question." *Id.* (quoting *Oberlin v. Marlin Amer. Corp.*, 596 F.2d 1322, 1327 (7th Cir. 1979)). While DTC must supervise its licensee to ensure quality and consistency in the products sold under its license, the duty does not create an obligation to ensure the licensee is engaged in direct patent infringement. Accordingly, the single assertion by NOCO that DTC owns the trademark under which Deltran and Deltran Operations allegedly sell the accused products does not support NOCO's infringement claims against DTC. For this added reason, DTC's Motion to Dismiss is granted.[3]

## IV.   CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** that Defendant Deltona Transformer Corporation's Motion to Dismiss With Prejudice (Doc. 33) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**.
2. On or before July 5, 2024, Plaintiff may file an Amended Complaint consistent with the directives of this Order.

**DONE AND ORDERED** in Orlando, Florida on June 14, 2024.

---

[3] Both NOCO and DTC cite past and ongoing litigation in support of their positions. The Court need not delve into these collateral matters to resolve the instant motion.

7

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties