UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**THE NOCO COMPANY,**

    **Plaintiff,**

v.                         Case No: 6:23-cv-2194-PGB-LHP

**DELTONA TRANSFORMER CORPORATION, DELTRAN USA, LLC and DELTRAN OPERATIONS USA, INC.,**

    **Defendants.**
_____/

## ORDER

This cause is before the Court on Plaintiff and Counterclaim Defendant The NOCO Company's ("**NOCO**") Motion to Dismiss Defendants and Counter Claimants Deltran USA, LLC and Deltran Operations USA, Inc's Amended Counterclaims of Inequitable Conduct. (Doc. 42 (the "**Motion to Dismiss**")). Defendants Deltran USA, LLC and Deltran Operations USA, Inc. (collectively the "**Defendants**") filed a Response in Opposition. (Doc. 46). Upon consideration, NOCO's Motion to Dismiss is denied.

**I.  BACKGROUND**

In this litigation whose history has been recounted elsewhere, Defendants filed Counterclaims against NOCO, alleging invalidity, non-infringement, and unenforceability of the U.S. Patent Nos. 11,447,023 ("**'023 Patent**"), 11,584,243 ("**'243 Patent**"), and 11,667,203 ("**'203 Patent**") (collectively the "**patents**").

(Doc. 39, ¶¶ 68–139). NOCO moves for the dismissal with prejudice of Defendants' claims that the patents are unenforceable based on NOCO's inequitable conduct. (Doc. 42). NOCO contends the Defendants alleged inequitable conduct without identifying "that even a single material, non-cumulative reference was withheld from the [United States Patent and Trademark Office ("**PTO**")]." (*Id.* at pp. 2–3). NOCO also asserts the Defendants did not "plead any facts that would permit a reasonable inference of materiality or intent to deceive." (*Id.* at pp. 3, 8).

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Thus, to survive a motion to dismiss made pursuant to Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The court is "not bound to accept as true a legal conclusion couched as a factual allegation," and the court must view the complaint in the light most favorable to the plaintiff and resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Hunnings v. Texaco*, Inc., 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

## B. Pleading Inequitable Conduct

Inequitable conduct "must be pled with particularity" under Rule 9(b). *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). "Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327. "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." *Id.* at 1326–27. Federal Circuit law governs whether an inequitable conduct pleading satisfies Rule 9(b). *Id.* at 1318. Moreover, "a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328–29. That is, "inequitable conduct requires a showing that undisclosed prior art was but-for material to the PTO's decision of patentability. Prior art is but-for material if the PTO would have denied a claim had it known of the undisclosed prior art." *See Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 991 (Fed. Cir. 2022) (citing *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011)).

## III. DISCUSSION

The issue before the Court is whether the Defendants properly pled inequitable conduct by NOCO and not whether they will prevail at trial on their

3

unenforceability claim. *See Exergen*, 575 F.3d at 1327–28; FED. R. CIV. P. 9(b). NOCO dedicates seven (7) pages of its Motion to Dismiss describing material it submitted to the PTO during prosecution of the patents. (Doc. 42, pp. 3–10). The Defendants correctly note that at the pleading stage, they need not prove they will ultimately prevail. (Doc. 46, pp. 4–5).

The Defendants submit that "NOCO's original sin at the heart of this case [is] Nook and Underhill claiming to invent something they did not invent." (Doc. 46, p. 3). The Defendants contend that NOCO, through inventors Nook and Underhill, discussed purchasing portable jump starters that are "functionally identical to the devices claimed in the [patents]" from Shenzhen Carku Technology Co., Ltd. ("**Carku**"). (*Id*. at p. 2 (citing Doc. 39, ¶¶ 10–25)). After visiting Carku's manufacturing facility in China and having procured two (2) testing reports on Carku jump starters and samples of Carku's E-Power jump starter products, NOCO ceased contact with Carku. (*Id*.). The Defendants allege that six (6) months later, on July 8, 2014, NOCO filed a patent application, listing Nook and Underhill as the inventors, and requesting prioritized examination. (Doc. 39, ¶ 35). The point being that NOCO allegedly stole the invention from Carku and obtained a patent for the device. The Defendants claim the Carku device is prior art to the patents because the device was on sale or offered for sale before the effective filing dates of the patents. (*Id*. ¶ 33).

The Defendants allege that "[n]one of the documents or information related to the Carku devices were provided to the [PTO] during the prosecution of the '015

4

Patent," even though they meet all the limitations of the independent claims of the patents except for the USB input limitations. (*Id.* ¶¶ 30, 34, 38). And all three of the patents "essentially claim the same invention as claim 11 of the '015 Patent[,]" which Nook and Underhill knew they had not invented.[1] (Doc. 46, p. 3).

Turning to the "who, what, when, where, and how of the material misrepresentation or omission committed before the [PTO]," the Defendants identify inventors Nook and Underhill, and two (2) lawyers, as responsible for the misrepresentations and omissions. (*Id.* at p. 6; Doc. 39, ¶¶ 78, 102, 126). The "what" consists of the named inventors and counsel filing patent applications knowing they were the same as Carku's prior art devices while failing to submit documents related to Carku; not disclosing material prior art with disclosures of the USB input; selectively disclosing extensive information with the specific intent to bury information related to the USB input; and intentionally failing to disclose prior art despite knowing that a USB input was explicitly used in the prior art. (Doc. 46, p. 7). The "when" consists of material misrepresentations and omissions during the prosecution of the patents and their parent. (*Id.*). The "where" involves NOCO's prefiling activity, including signing and filing of inventor declarations. (*Id.* at pp. 7–8). The "why/how" consists of withholding invalidity contention charts that, if provided to the Examiner, point out where relevant subject matter is in the

---

[1] The Defendants note that Carku began an *inter partes review* ("**IPR**") as to the '015 Patent, and only claim 11, reciting a USB input for charging the internal battery of the jump starter, survived. (Doc. 46, p. 3 (citing *Shenzhen Carku Tech. Co. v. NOCO Co.*, IPR2020-00944, 2021WL5193901, at *38–39, *44 (P.T.A.B. Nov. 3, 2021)).

references with the specific intent to shield the claim charts from review by the Examiner. (*Id.* at p. 7 (citing Doc. 39)). The Defendants contend the claim charts were not disclosed, because the Examiner would have used them and their reference to USB charging capabilities in the prior art to reject claim 11, which would have resulted in the rejection of the patents. (*Id.* at p. 8).

If this was not enough notice of inequitable conduct, the Defendants address a timeline of events showing materiality. (*Id.* at pp. 9–10 (citing Doc. 39)). The timeline consists of NOCO's solicitation of information from Carku, NOCO's abrupt abandonment of the relationship with Carku after receiving information about the device, NOCO's application soon after without disclosure of the Carku materials, and the IPR decision, which confirms the materiality of the omitted references. (*Id.*). Finally, as evidence of bad faith, the Defendants point to NOCO's conduct in "burying" a material prior art reference. (*Id.* at p. 15; Doc. 39, ¶ 83); *see Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1184 (Fed. Cir. 1995) (explaining that burying a material prior art reference by including it with a multiplicity of other references can be probative of bad faith).

## IV.   CONCLUSION

For these reasons, the Defendants have sufficiently pleaded claims for unenforceability based on inequitable conduct. Accordingly, the Plaintiff and Counterclaim Defendant The NOCO Company's Motion to Dismiss (Doc. 42) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on June 17, 2024.

6

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties