UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**THE NOCO COMPANY,**

        **Plaintiff,**

v.                                 Case No: 6:23-cv-2194-PGB-LHP

**DELTONA TRANSFORMER CORPORATION, DELTRAN USA, LLC and DELTRAN OPERATIONS USA, INC.,**

        **Defendants.**

_____/

## ORDER

This cause is before the Court on Defendant Deltona Transformer Corporation's (**"DTC"**) Motion to Dismiss Plaintiff's Amended Complaint with Prejudice. (Doc. 77 (the "**Motion to Dismiss**")). Plaintiff submitted a Response in Opposition. (Doc. 84). Upon consideration, DTC's Motion to Dismiss is denied.

**I.   BACKGROUND**

On November 13, 2023, The NOCO Company (**"NOCO"**) sued DTC, Deltran USA, LLC (**"Deltran"**), and Deltran Operations USA, Inc. (**"Deltran Operations"**) (collectively, the "**Defendants**") for allegedly violating three patents that NOCO owns. (Doc. 1 (the "**Complaint**")). The patents at issue are U.S. Patent Nos. 11,447,023 ("**'023 Patent**"), 11,584,243 ("**'243 Patent**"), and 11,667,203 ("**'203 Patent**") (collectively, the "**Asserted Patents**"). (*Id.* ¶ 17). All three patents pertain to portable devices capable of jump-starting an

automobile. (*Id.* ¶¶ 18–20). DTC moved to dismiss the Complaint (Doc. 33), and the Court determined that the Complaint was a shotgun pleading and ordered NOCO to name each Defendant separately and to specify how each Defendant infringes the relevant patent(s). (Doc. 65, pp. 4–5). The Court found the Complaint did not plead sufficient facts to show DTC makes, uses, offers to sell, sells, or imports into the United States any of the accused products. (*Id.* at p. 5). That is, the Complaint did not attribute specific conduct to DTC and thus did not support the contention that DTC "uses" the accused products through its status as a licensor.[1] (*Id.* at pp. 6–7). NOCO filed an Amended Complaint (Doc. 71), and DTC moved to dismiss it for failing to state a claim. (Doc. 77).

## II.   LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Thus, to survive a motion to dismiss made pursuant to Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[1]   The Court found that owning the trademark under which Deltran and Deltran Operations sell the accused products does not support an infringement claim. (Doc. 65, p. 7). That is, DTC's right to supervise its licensee to ensure the quality of products sold under its license does not create an obligation to guarantee that the licensee is not engaged in direct patent infringement. (*Id.*).

2

The court is also "not bound to accept as true a legal conclusion couched as a factual allegation," and the court must view the complaint in the light most favorable to the plaintiff and resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam). In sum, the court must (1) ignore conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; (2) accept well-pled factual allegations as true; and (3) view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION

### A. Overview

DTC moves to dismiss the Amended Complaint and asserts that NOCO fails to assert facts establishing plausible claims for direct infringement or inducement.[2] (Doc. 77, p. 1). DTC argues that the Deltran Defendants are separate legal entities and Plaintiff's claim that overlapping officers or shareholders coupled with DTC's right to maintain quality control under the trademark license is not "use" under Section 271(a). (*Id*. at p. 2). DTC also contends that NOCO has not pled facts showing DTC specifically intended to cause a third party to infringe the Asserted Patents. (*Id*. at p. 3). DTC next claims the alleged acts supporting direct and induced infringement occurred in 2020

---

[2] DTC owns the BATTERY TENDER® trademark which it licenses to Deltran Operations. (Doc. 71, ¶ 45). Plaintiff alleges in Counts Four through Six of the Amended Complaint that DTC infringes the '023, '243, and '203 patents. (*Id*. ¶¶ 125–145).

3

and 2021 before the Asserted Patents were issued. (*Id.*). Finally, DTC argues it is improper for NOCO to allege acts purporting to show that DTC induced infringement of the '023 patent as evidence of induced infringement of the '243 and '203 patents. (*Id.* at p. 4).

NOCO alleges that the Defendants are privately held companies owned and controlled by the Prelec family. (Doc. 71, ¶ 27). For example, DTC is owned by Mr. Prelec, Jr. and Mr. Prelec, Sr. (*Id.* ¶¶ 32–36); Deltran is owned by Mr. Prelec, Jr. along with Mr. Prelec, Sr.'s daughter and nephews; and DTC is an owner of Deltran. (*Id.* ¶¶ 39–41). Similarly, Plaintiff alleges that Deltran Operations is owned by Mr. Prelec, Jr. and by Mr. Prelec, Sr.'s daughter and nephews and DTC. (*Id.* ¶¶ 42–43). Plaintiff NOCO further claims that DTC retains the intellectual property rights to the "Battery Tender®" brand even though Deltran operates the Battery Tender® business. (*Id.* ¶ 45). Plaintiff alleges that the Defendants are operating in concert to make, use, offer to sell, and/or sell infringing products. (*Id.* ¶¶ 46–47). Plaintiff further avers that "DTC admits to being intimately involved in directing and approving the design and manufacture of the Accused Battery Tender® jump starters." (*Id.* ¶¶ 5–55). In Counts Four, Five, and Six, Plaintiff alleges that DTC directly infringes the patents-at-issue by using the Accused Battery Tender® jump starters in a manner that infringes specified

4

claims and actively induces infringement by directing and/or encouraging Deltran to infringe.[3] (*Id.* ¶¶ 125–145).

### B. Infringement

DTC contends that in the Amended Complaint, Plaintiff pleads nothing more than DTC's ability as the trademark licensor to control the licensee and veto designs based on style or quality and more is required for direct infringement—the same deficiency that doomed the initial Complaint. (Doc. 77, pp. 10–11 (quoting *Hockerson-Halberstadt, Inc. v. JSP Footwear, Inc.*, 104 F. App'x 721, 723–24 (Fed. Cir. 2004)). DTC contends that NOCO "conflates inspection as a trademark licensor with use under 35 U.S.C. § 271." (*Id.* at p. 11). DTC correctly notes that absent allegations that the licensor "made" or "sold" an accused product, deriving a benefit through a trademark license does not amount to use. *See L.A. Gear, Inc. v. E.S. Originals, Inc.*, 859 F. Supp. 1294, 1296–1303 (C.D. Cal. 1994). In the initial Complaint, NOCO claimed DTC owned the Battery Tender® trademark but failed to allege that DTC makes, uses, offers to sell, sells, or imports any of the accused Battery Tender® products. (Doc. 1, ¶¶ 25–28). And so, the Court granted DTC's prior motion to dismiss. (Doc. 65. pp. 5–7). The Court also found the initial Complaint violated the shotgun pleading prohibition because Plaintiff lumped the Defendants together and failed to articulate how

---

[3] DTC argues that the Amended Complaint asserts conclusory allegations and stops short of demonstrating plausible entitlement to relief. (Doc. 77, p. 9 (citing *Iqbal*, 556 U.S. at 677–678)).

5

each Defendant's conduct resulted in infringement. (*Id.* at p. 4). The Plaintiff has cured these defects in the Amended Complaint.

Unlike the initial Complaint, the relationship between the Defendants and their overlapping management is detailed in the Amended Complaint. (Doc. 71, ¶¶ 27–43). Plaintiff alleges that Mr. Prelec Jr. is the operator of the Battery Tender® business and that DTC holds "the intellectual property rights to the 'Battery Tender' brand." (*Id.* ¶ 45). Plaintiff alleges that "DTC has exercised control and is intimately involved in directing and approving the design, manufacture, and distribution of the Accused Battery Tender® jump starters." (*Id.* ¶ 53). Plaintiff further contends that Deltran designs, manufactures, and distributes the Jump Starter products "which incorporate DTC's know-how, trade secrets, documentation, data, software, and other knowledge, information, and materials controlled by DTC that is part of the Licensed Technology." (*Id.* (quoting Doc. 72-23, ¶ 12)). And unlike the initial Complaint, the Amended Complaint includes allegations that the Defendants are operating in concert to make, use, offer to sell, and/or sell infringing products. (Doc. 71, ¶¶ 46–47).

Moreover, Mr. Prelec, Sr., who co-owns DTC, "sits on [Deltran's] board and has approved *all of [Deltran's] products*." (*Id.* (emphasis in original)). Plaintiff also contends that DTC admitted to providing Deltran "guidelines, rules, or written parameters" and directing the design of the Accused Battery Tender® jump starters. (*Id.* ¶¶ 54–55). The Amended Complaint asserts that DTC, via Mr. Prelec, Sr., has required Deltran's engineering department to provide

6

preproduction samples of all Licensed Products under the Worldwide Licensing Agreement.[4] (*Id.* ¶¶ 57–62). The Amended Complaint alleges that DTC has used and continues to use the Accused Battery Tender® jump starters by inspecting the Accused Products after they failed to meet DTC's standards.[5] *See Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1366 (Fed. Cir. 2001); *see also, e.g.*, *Garrett v. TP-Link Rsch. Am. Corp.*, No. 20-cv-03491-SI, 2020 WL 6873419, at *5 (N.D. Cal. Nov. 23, 2020) ("The Federal Circuit has established that testing is a use of the invention that may infringe under § 271(a)." (cleaned up)); (Doc. 84, pp. 4–5).

While the degree of control exerted by DTC over the Deltran Defendants is somewhat opaque, as the court in *Garrett* astutely noted: "[i]t is hard to imagine a scenario where, prior to discovery, a plaintiff can sufficiently uncover evidence of internal business practices—like in-house testing—for purposes of supporting

---

[4]   The Worldwide License Agreement defines "Licensed Technology" broadly and includes:

> all trade secrets, know-how, formulas, prototypes, specifications, directions, instructions, test protocols, procedures, and results, studies, analyses, raw material sources, data, manufacturing data, formulation or production technology, conceptions, ideas, innovation, discoveries, inventions, processes, methods, materials, machines, devices, formulae, equipment, enhancements, modifications, technological developments, techniques, systems, tools, designs, drawings, plans, software, documentation, data, programs and other knowledge, information, skills and materials **controlled by Licensor** pertaining to the Licensed Products and **necessary and/or useful in the manufacture, sale or use of the License Products**, and any modifications, variations, derivative works and improvements of or relating to any of the foregoing.

(Doc. 72-23, ¶ 9 (emphasis added)).

[5]   (*See* Doc. 71, ¶¶ 57–65).

7

the allegations of a complaint." 2020 WL 6873419, at *5. As in *Garrett*, the Plaintiff here "must rely on reasonable inferences drawn from other available evidence at its disposal." *Id.* NOCO relies on inferences drawn from DTC's responses to requests for admissions in state court litigation, the plain wording of the Worldwide License Agreement, and Deltran Operation's admission that DTC requested and received samples of the Accused Battery Tender® jump starters.[6] (Doc. 71, ¶¶ 55–65). At this stage of the proceedings, this is enough to plead use under § 271(a) and therefore direct infringement.

The Federal Circuit in *Amarin Pharma, Inc. v. Hikma Pharmaceuticals USA, Inc.*, 104 F.4th 1370, 1377 (Fed. Cir. 2024), held that "[t]o state a claim for induced infringement, a patent owner must plausibly allege facts establishing that there has been direct infringement by a third party and that the alleged infringer affirmatively induced that infringement with knowledge that the induced acts constituted patent infringement." In the Amended Complaint, Plaintiff alleges that the Deltran Defendants infringe the '023, '243, and '203 patents. (Doc. 71, ¶¶ 107–124). Plaintiff claims that DTC knew that each Asserted Patent claims priority to the '015 Patent. (*Id.* ¶¶ 66–67). Plaintiff also alleges that each of the Asserted Patents was pending and issued during the pendency of Plaintiff's 2020 lawsuit. (*Id.*). Plaintiff further contends that the infringement allegations advanced in the '015 lawsuit are "materially identical to those alleged

---

[6] NOCO is correct that the allegations found in the Amended Complaint are not limited to activities occurring before 2020 and 2021 because Plaintiff alleges that DTC's inspection efforts are ongoing. (Doc. 84, p. 8).

8

in this litigation." (*Id.* ¶ 70). Plaintiff reasons that since DTC knew that the Deltran Defendant's infringing acts were the same as those at issue in the '015 litigation, DTC knew the Deltran Defendant's acts constituted infringement of the Asserted Patents. (Doc. 84, p. 11). Thus, the pre-suit knowledge element of induced infringement is satisfied.

As discussed above, the Amended Complaint also alleges that DTC controls the Deltran Defendants through its ownership interest in those companies. (Doc. 71, ¶¶ 41, 53). Plaintiff contends that Deltran and DTC have admitted that DTC provides direction and approves the design, manufacture, and distribution of the Accused Battery Tender® jump starters. (*Id.*); *see Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1378 (Fed. Cir. 2005) (noting that induced infringement can be based on evidence the defendant exerted control over the direct infringer). NOCO asserts that DTC required Deltran to provide samples of Accused Products for inspection and that "DTC . . . exercised control and is intimately involved in directing and approving the design, manufacture, and distribution of the Accused Battery Tender® jump starters." (*Id.* ¶¶ 53, 58–62). This is enough to allege induced infringement, particularly where the alleged induced infringement is described as ongoing.[7]

---

[7] The Court does not find the Amended Complaint to constitute a shotgun pleading. The better practice is to separate counts asserting direct infringement from those alleging induced infringement. *See O.E. Wheel Distrib., LLC v. Mobile Hi-Tech Wheels, LLC*, No. 21-cv-2573, 2022 WL 2918028, at *5 (M.D. Fla. July 25, 2022). That said, here the allegations of direct and induced infringement are sufficiently pled to enable DTC to fashion a precise answer as to each theory of liability. *See Glob. Tech LED, LLC v. Every Watt Matters, LLC*, No. 15-cv-61933-BLOOM/Valle, 2016 WL 8739321, at *6 (S.D. Fla. Aug. 1, 2016).

## IV.  CONCLUSION

For these reasons, DTC's Motion to Dismiss (Doc. 77) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on October 1, 2024.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties